IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IZAIHLL J. JACKSON, § | |
| PETITIONER, § | |
| § | |
| V. § | CASE NO. 3:20-CV-2987-B-BK |
| § | |
| K. ZOOK, § | |
| RESPONDENT. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and Special Order 3, Izaihll J. Jackson's petition for habeas corpus under 28 U.S.C. § 2241 was referred to the undersigned United States Magistrate Judge. As detailed here, the petition should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

Jackson is currently serving an aggregate sentence of 130 months' imprisonment—consisting of a 130-month term for distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1)&(b)(1)(C), and a concurrent 24-month term for violating conditions of supervised release imposed upon a prior conviction of aiding and abetting distribution of cocaine base, also in violation of 21 U.S.C. § 841(a)(1)&(b)(1)(C)—all imposed by the United States District Court for the Western District of Texas. Doc. 6 at 5-6. Here, Jackson, who is currently housed at FCI Seagoville, challenges a prison disciplinary proceeding at Federal Prison Camp (FPC) Big Spring—specifically, the resulting loss of good time credit. Doc. 3 at 2.

On September 4, 2019, while housed at FPC Big Spring, Jackson was given a copy of an incident report alleging that the previous day he possessed a hazardous tool (a cellular phone), in

violation of the Federal Bureau of Prisons disciplinary code. During an investigation, also conducted on September 4th, Jackson was advised of his right to remain silent, after which Jackson stated, "I do not know anything about a phone. I just got to this facility." Doc. 7 at 5. Ultimately, the charge was referred to the Discipline Hearing Officer (DHO) for "disposition." Doc. 7 at 4, 7.

On September 11, 2019, Jackson was provided a form titled "Inmate Rights at Discipline Hearing," which outlined his rights in relation to a disciplinary hearing and any subsequent administrative appeals, as well as the fact that "a finding by the DHO that [he] committed the prohibited acts(s) may result in a rescission or retardation by the Parole Commission of the presumptive or effective parole date." Doc. 7 at 7. Jackson waived in writing his rights to have a staff representative and present witnesses at the disciplinary hearing. Doc. 7 at 9.

Jackson appeared before the DHO on September 13, 2019. Doc. 7 at 11. In a subsequent written report, the DHO recounted the evidence presented:

> The incident report written by Officer Watson states, "At approximately 11:40 p.m. on 9-3-2019 while conducting rounds at the Camp, I conducted a random search of bunk C04-007L and under the pillow was a Black cell phone with a square magnet attached to the back cover over the brand name. The bunk belonged to Jackson, Izaihll 79475-180. Operation Lt. was notified." The DHO notes the reporting officer is an eye-witness to this incident in which he conducted a search of your bunk and found a cell phone under your pillow. The cell phone was in your area which is under your dominion and control.
>
> During the investigation, you stated, "I do not know anything about a phone. I just got to this facility." The DHO notes your statement as a denial to committing this prohibited act; however, if you were in recreation when the phone was found there is a reason the CO did not inform you of the cell phone at the time since you were not present.
>
> . . .
>
> Photographic evidence depicts the black cell phone found under your pillow on your bunk.

2

> Chain of custody Log indicated a black cell phone was confiscated from camp dorm 4, bunk 007L your assigned bunk.
>
> Inmate History Quarters indicate you were assigned to C04-007L from 07-31-2019 thru 09-04-2019 and then placed in the Special Housing Unit because of the incident. The DHO notes this evidence indicates you were assigned to C04-007L at the time of the incident.
>
> Memorandum from Officer Watson states, "On 09-03-2019, at approx. 11:40 PM, while conducting a random search in D Dorm under the pillow on a bunk belonging to inmate Jackson 79475-180, was a black cell phone with a square magnet on the back over the brand name. Operation Lieutenant was notified[,] and cell phone was given to Compound Officer to be taken to the Lieutenant's Office."
>
> During the DHO hearing, the incident report was read aloud to you and you stated, "I was outside when they supposedly found the cell phone. I was wondering why I was not in SHU that night. I was not even situated yet to have a phone. He said he did not write me up that night and they told him to write the report the next day. There is a plug right there by my bunk, I cannot stop anybody from going there and using it. That was the only bottom bunk open. Anybody could have put the phone there." The DHO considered your statement; however, there was no evidence to suggest you were set up and the phone was under your pillow not plugged in; therefore, there being an outlet next to your bunk is irrelevant.
>
> Program Statement 5270.09, Inmate Discipline Program, states, "It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free from contraband, and to seek medical and dental care as you may need it."

Doc. 7 at 12-13. The DHO concluded that "the greater weight of the evidence was sufficient . . . to support that [Jackson] committed the prohibited act of Possession, Manufacture, Introduction, or Loss of a Hazardous Tool (cellular phone). . . ." As punishment, the DHO disallowed 41 days of Jackson's good conduct time credit, imposed 30 days of disciplinary segregation, and suspended Jackson's commissary, telephone and visiting privileges for 180 days. Doc. 7 at 13.

Jackson was given a copy of the DHO's report the same day as the disciplinary hearing, Doc. 7 at 13, and filed an unsuccessful Regional Administrative Remedy Appeal on November

3

25, 2019, Doc. 3 at 11. His subsequent Central Office Administrative Remedy Appeal was also denied. Doc. 3 at 15.

In his § 2254 habeas petition, Jackson alleges that the evidence does not support a finding that he committed the infraction. Doc. 3 at 6-7. He thus contends that the loss of 41 days of good time credit as punishment was unlawful. Doc. 3 at 7. As relief, Jackson requests that the Court "waive and dissolve this Incident Report and Sanction and restore all rights and lost good time (GTC)," and return him to "out-custody camp status where he began prior to this unlawful sanction." Doc. 3 at 8.

## II. APPLICABLE LAW

BOP authorities may award credit to inmates against their prison sentences as a reward for good behavior. 18 U.S.C. § 3624(b). An inmate may not be deprived of these so-called "good time credits" for a disciplinary violation unless afforded due process. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Due process is satisfied when the inmate is given (1) advance written notice of the charges, (2) the opportunity to appear and call witnesses, (3) the opportunity, in certain situations, for the assistance of a fellow inmate or staff, and (4) a written statement by the fact finder of the evidence relied on for the decision. *Id.* at 563-70. Federal prisoners may contest the loss of good time credits under 28 U.S.C. § 2241, which is the proper procedural vehicle for a prisoner to challenge "the execution of his sentence rather than the validity of his conviction and sentence." *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992).

In reviewing an institution's disciplinary actions, the Court need only consider if the decision was supported by "some basis in fact" or "a modicum of evidence." *Superintendent Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454-56 (1983); *see also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981) (citation omitted) (court should consider whether

4

disciplinary action is "supported by 'some facts' 'whether any evidence at all' supports the action taken by the prison officials"). Federal court intervention is appropriate only when the prison official's action is "arbitrary or capricious." *Reeves v. Pettox*, 19 F.3d 1060, 1062 (5th Cir. 1994). Moreover, the evidence need not eliminate all other conclusions, nor does the "some evidence" standard require a weighing of the evidence or an independent assessment of witness credibility. *Hill*, 472 U.S. at 455-56. An incident report alone can constitute some evidence. *See Johnson v. Hudson*, 242 F.3d 534, 536-37 (5th Cir. 2001).

### III. ANALYSIS

Jackson has not alleged a due process violation. That notwithstanding, the Court finds he was afforded all required due process during his disciplinary proceedings. As recounted *supra*, Jackson received written notice of the allegations on September 4, 2019, was advised on September 11, 2019 of his right to have a staff representative and to call witnesses at the hearing before the DHO (which he declined), and, following the disciplinary hearing on September 13, 2019, was provided a copy of the written decision that summarized the evidence on which the DHO relied. Doc. 7 at 4, 9, 11-13.

Jackson instead contests the sufficiency of the evidence, arguing that the contraband was found in the common area of a prison cell to which other inmates had access; no evidence such as phone calls, phone records, SIM data or anything of the like exists linking Jackson to the cell phone; and that the incident report reflects it was written by the reporting officer at 8:45 pm—three hours before the telephone was found.[1] Doc. 3 at 6. The written report of the DHO reflects that he considered Jackson's version of the events and impliedly rejected it. Doc. 7 at

---

[1] The report apparently was corrected to show it was made at 8:45 am on the day following the cell phone's discovery. *Compare* Doc. 3 at 10 and with Doc. 7 at 4.

5

13. In essence, Jackson now invites this Court to reweigh the evidence and substitute its credibility findings for those of the DHO. That, the Court cannot do.

At a minimum, some evidence exists to support the charge against Jackson. As recounted above, The DHO's decision was supported by the written reports of a FCI Big Spring employee (incident report and memorandum) detailing his discovery of a cellular telephone under a pillow on Jackson's assigned bunk, a photograph of the telephone the employee discovered, a chain-of-custody log for the telephone, and an electronic record confirming that at the time of the infraction, Jackson was assigned to the bunk where the telephone was found. Doc. 7 at 12-13. And despite Jackson's protestations, Courts previously have found sufficient evidence to sustain disciplinary charges where a prohibited item is found in the inmate's living quarters—even where other inmates had access to the area. *See, e.g., Flannagan v. Tamez*, 368 F. App'x 586, 588 n.6 (5th Cir. 2010) (upholding disciplinary action against inmate where contraband was found in an area that he shared with five other inmates); *Buitrago v. Mejia*, 2015 WL 5092603, at *3 (N.D. Tex. Aug. 28, 2015) (noting that "[a]n inmate who shares living quarters with other inmates may be held responsible for possession of a hazardous tool found concealed in the living quarters and accessible to all of the inmates who live there. . ."); *Pruitt v. Martin*, 2013 WL 6141653, at *3-4 (E.D. Tex. Nov. 21, 2013), *aff'd*, 582 F. App'x 319 (5th Cir. Sept. 12, 2014) (in open dormitory, discovery of cellular telephone underneath pillow on inmate's bunk was some evidence that inmate possessed cellular telephone).

In sum, there is clearly "some basis in fact" and more than a "modicum of evidence" to support the DHO's finding of a disciplinary violation. Thus, Jackson is not entitled to relief.

### IV.  CONCLUSION

For the foregoing reasons, Jackson's petition for habeas corpus under 28 U.S.C. § 2241 should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on January 27, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).